23 C.C.P.A.(Patents)

## In re SCHWARTZ et al.

### Patent Appeal No. 3613.

Court of Customs and Patent Appeals.
April 6, 1936.

Joseph G. Denny, Jr., of Philadelphia, Pa., for appellants.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting all of the claims, Nos. 1 to 7, inclusive, in appellants' application for a patent for an alleged invention relating to a method and an apparatus for forming printing plates.

Claims 1 to 4, inclusive, are method claims, and 5, 6, and 7 are apparatus claims.

Claims 1 and 7 are illustrative. They read:

"1. In a method of forming printing plates, the steps which consist in positioning by suction a heat insulating sheet relatively to an intaglio sheet and pouring a solidifiable liquid between the intaglio face of said last named sheet and said insulating sheet."

"7. A printing-plate former comprising upright walls having opposed faces of arcuate contour about a vertical axis and being hinged about upright side edges for relative movement between closed position in which said walls nest and said faces are definitely spaced apart and open position for receiving a sheet element on each face, the walls having through apertures within imperforate perimetral margins thereof and each being provided with an imperforate backing structure sealed to its margin and cooperating with the wall to form a box having a port, means closing the bottom of the space between the walls in the closed position thereof, and suction means and conduits connecting the suction means to said ports compensating for relative movement of the walls and operative for holding an element on each wall face by suction during relative movement of the walls, top marginal portions of the walls cooperating, in closed position, to provide a funnel-like entrance for molding material between the elements on the wall faces."

The references are: Dow, 1,022,067, April 2, 1912; Barber, 1,176,265, March 21, 1916; Gammeter, 1,544,570, July 7, 1925.

It appears from appellants' application and the appealed claims that molten metal is poured between the matrix and a heat insulating sheet for the purpose of forming a printing plate, that both the matrix and the insulating sheet are held firmly and uniformly in position by the exhaustion of air through apertures in the walls or plates covering them, and that the purpose of so holding the matrix and the insulating sheet is, as stated in appellants' specification, "* * * to eliminate or minimize shrinkage of the printing plate or the setting up of stresses therein due to unequal cooling; to avoid the necessity for shaving or trimming the back of the printing plate, and to provide a printing plate with printing characters having sharp outlines and a solid body. * * *

"The matrix and insulating sheet are suitably positioned relatively to one another by the bed plate and cover plate of a casting box, against which plates the matrix and insulating sheet are firmly and uniformly held as a result of the exhaustion of air through a multiplicity of small apertures through such plates and covered by the matrix and insulating sheet. The plates are preferably provided with unpolished or frictional surfaces so that there can be no slippage of the matrix or insulating sheet relatively to the plates, and suction is so uniformly applied to the backs of the matrix and the insulating sheet as to hold them against wrinkling or contraction as a result of contact of the liquified type metal therewith or the cooling of such metal, but the sheets are held by suction at so many different points that the stresses are uniformly distributed throughout the entire area of the sheets with consequent avoidance of any tendency to tearing. * *

"The exhaustion of air through the porous matrix further prevents any air being trapped in the intaglio characters by the rising metal and the characters are consequently sharp in outline and free from blow holes."

As stated by the Primary Examiner, the references "Dow and Gammeter each show a stereotype casting mold having complementary members with a matrix on the casting face of one member and a heat insulating sheet held on the casting face of the other member, molten metal being poured between the two sheets to form a printing plate. [The reference] Barber discloses a stereotype casting mold in which the matrix is held in position against the face of one member by means of suction exerted through a plurality of apertures in the mold wall. The wall has an imperforate, sealed backing connected by a conduit to suction means."

In holding that the appealed claims were unpatentable over the prior art, the Primary Examiner said: "No invention is involved in holding both the matrix and insulating sheets in the Dow or Gammeter molds by the suction means disclosed by Barber. This is but the obvious substitution of one securing or holding means for another. The use of suction to hold the matrix is old as disclosed by Barber and the additional use of this holding means for the insulating sheets as well as the matrices of Dow and Gammeter is an obvious expedient devoid of inventive thought."

In affirming the decision of the Examiner, the Board of Appeals said: "The claims have been rejected as unpatentable over either of the patents to Dow and Gammeter in view of the patent to Barber. In both Dow and Gammeter a sheet of paper is clamped to one wall of the mold while the matrix is clamped to the other wall of the mold and the metal is cast between the matrix and the sheet of paper as in the application. Barber discloses that it is old to use suction means for holding a

matrix in position and there clearly would be no invention, in view of this reference, in employing suction means for holding the matrix in position in either Dow or Gammeter. We further believe that it would be a mere carrying forward of the same idea without the exercise of invention to also use suction means for holding the sheets of paper in position in Dow and Gammeter."

It is contended by counsel for appellants that, by holding the matrix and the insulating sheet firmly and uniformly in position by exhausting air from their surfaces, tearing and wrinkling of the sheet are avoided and the stresses imposed thereon by contraction of the molten metal are distributed over its entire area, thereby securing uniformity of cooling and retarding "contraction of the plate"; that applicants use suction to withdraw air "entrapped by the rising level of splashing molten metal" through a porous matrix and a porous insulating sheet for the purpose of preventing "blow holes" in the plate. Counsel for appellants further contends that, although the patent to Gammeter discloses insulating paper such as is disclosed by appellants, the patentee's insulating sheet is held in position by being fastened at the edges only, "and consequently upon contraction it will tear and wrinkle, for the stresses imposed on the paper by contraction of the metal are not distributed over the entire area of the paper but are concentrated at the edges where the paper is fastened."

We have no doubt but that, by their method and apparatus, appellants obtain the results claimed by them. However, it is the method or apparatus, not the results obtained, which may be patented. See In re Hopkins, 77 F.(2d) 658, 22 C.C.P.A. (Patents) 1235.

The patent to Gammeter discloses a device for forming arcuate stereotype plates. The arcuate feature is referred to in claim 7 only of the appealed claims. The patent also discloses an insulating sheet of fibrous material, "such as sheet fibre, asbestos or ordinary news print paper," and a matrix, which, the patentee states, "is formed in the usual manner." No claim is made here by counsel for appellants that Gammeter's matrix is not of porous material. But, if it be assumed that it is not, the matter is not of vital concern, because, although it is argued that one of the new and unobvious results obtained by appellants' method and apparatus is the prevention of "blow holes" in the plate by the withdrawal of air "entrapped by the rising level of splashing molten metal" through a porous matrix, and a porous insulating sheet, none of the appealed claims call for a porous matrix, nor do they call for the withdrawal of air through such a matrix or through a porous insulating sheet.

It is true, as contended by counsel for appellants, that the matrix and insulating sheet in the Gammeter reference are fastened by mechanical means, and that neither Gammeter nor the patentee Dow disclose holding the matrix and the heat insulating sheet in position by exhausting air from their respective surfaces, as do appellants. However, as pointed out by the tribunals of the Patent Office, the patent to Barber discloses that it is old to hold a matrix in position by the use of suction.

The patentee Barber having taught that a matrix could be held firmly in position by the use of suction, it certainly would not require the use of the inventive faculties to conclude that an insulating sheet could likewise be held firmly in position. All that it was necessary for appellants to do was to apply suction to both the matrix and the insulating sheet in the patent to Gammeter. This, we think, required nothing more than ordinary mechanical skill.

We are in entire agreement with the conclusion reached by the tribunals of the Patent Office. The decision of the Board of Appeals is affirmed.

Affirmed.